IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIGHT HEAD LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Civil Action No.: 1:24-CV-13410<br><br>Honorable Judge Elaine E. Bucklo<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' OPPOSITION TO BHL'S MOTION FOR ENTRY OF A
<u>PRELIMINARY INJUNCTION</u>.**

Defendant No. 1 – Yuyao Jixing Tool Co., Ltd. d/b/a WopkDupk (Seller ID: A1ZUP9DO2C2YKP), and Defendant No. 5 – Nanjing Ruichang Robot Co., Ltd. d/b/a HyperDolphin Direct (Seller ID: A29B5DKX548OQV) (collectively "Defendants") submit this Opposition to Plaintiff Bright Head LLC's (BHL) Motion for Entry of A Preliminary Injunction. *See* ECF No. 30 ("PI Motion").

**<u>INTRODUCTION</u>**

BHL has moved to preliminarily enjoin the Rechargeable Headlamp with Hand-Free Sensor sold by WopkDupk and the Headlamp sold by HyperDolphin (collectively the "Accused Products"), alleging the Accused Products infringe the U.S. Patent No. 10928052 (the "'052 Patent") in its Complaint. *See* PI Motion; *see also* ECF No. 1 ("Complaint") ¶¶ 12, 28, 32-33, 36. However, BHL fails to satisfy its heavy burden of demonstrating that it is entitled to the drastic

1

and extraordinary remedy it seeks. Instead, BHL's attempt to enforce the '052 Patent underscores a clear abuse of the patent system, seeking to weaponize litigation not to protect innovation, but to gain an unfair competitive edge and suppress lawful market competition.

First, BHL cannot establish a likelihood of success on the merits. It fails to address claim construction issues or show that the Accused Products will likely meet all limitations of any asserted patent claim. On the other hand, Defendants have satisfied their burden of proving noninfringement, even under the broadest reasonable interpretation of the claim terms, not only raising a substantial question regarding noninfringement, but proving the '052 Patent is invalid as a matter of law.

More importantly, BHL relies entirely on misapplied legal standards in its Memorandum in Support of Motion for Preliminary Injunction. *See* ECF No. 31 ("PI Memo"). That misplaced reliance also embodies vague speculation and conclusory attorney argument. BHL fails to present any concrete, non-conclusory evidence demonstrating that it has suffered, or is likely to suffer, irreparable harm, which cannot be remedied by monetary damages. Nor does it establish the required strong causal nexus between the alleged infringement and any purported harm.

Consequently, BHL's Preliminary Injunction Motion should be denied.

## ARGUMENT

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief". *Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1165 (Fed. Cir. 2014). It is exceedingly rare in patent cases. Contrary to BHL's assertion that "[b]y entering the TRO, this Court has already found that the above requirements have been satisfied," PI Memo at 4, the Federal Circuit has stated that "[a] preliminary injunction is a 'drastic and extraordinary remedy that is not to be routinely granted.'" *Nat'l Steel Car, Ltd. v.*

*Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (quoting *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993)).

It is well established that "[t]he grant or denial of a preliminary injunction … is within the sound discretion of the district court." *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). One can issue only if the movant proves: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id*. at 1375-76 (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). The first two factors–likelihood of success on the merits and irreparable harm–are the most critical in a patent case, and a court may deny a motion for a preliminary injunction if "a party fails to establish *either* of the[se] two critical factors." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994).

However, BHL here improperly seeks an automatic conversion of an *ex parte* TRO into a preliminary injunction by relying on three unpublished opinions from this Court, none of which compel such a result. *See* PI Memo at 3; *see also* Ex.1 to PI Memo. This is not the law; the preliminary injunction cannot be presumed or shortcut through selective citations to non-binding, fact-specific rulings. Patent cases do not "require unique treatment." *Abbot Labs v. Sandoz, Inc.*, 544 F.3d 1341, 1365 (Fed. Cir. 2008) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006)). The issuance of a preliminary injunction requires an independent and substantive evaluation of the evidentiary support, and "the movant must establish at the very least both … a likelihood of success on the merits and irreparable harm." *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343, 1348 (Fed. Cir. 2003).

**I.      BHL IS NOT LIKELY TO SUCCEED ON THE MERITS OF ITS PATENT INFRINGEMENT CLAIMS.**

"[A]t the preliminary injunction stage, because of the extraordinary nature of the relief, the patentee carries the burden of showing likelihood of success on the merits with respect to the patent's validity, enforceability, and infringement." *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991).

Hence, "[f]or [BHL] to establish that it is likely to succeed on the merits, it 'must demonstrate that it will likely prove infringement of one or more claims of the patent-in-suit, and that at least one of those same allegedly infringed claims will also likely withstand the validity challenges presented by the accused infringer.'" *Astra-Zeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1050 (Fed. Cir. 2010) (quoting *Amazon.com*, 239 F.3d at 1351). "A preliminary injunction should not issue if an alleged infringer raises a substantial question regarding either infringement or validity, i.e., the alleged infringer asserts an infringement or invalidity defense that the patentee has not shown lacks substantial merit." *Id*.

BHL is highly unlikely to succeed on the merits, as the Accused Products do not infringe Claim 1 of the '052 Patent – either literally or under the doctrine of equivalents – and because Claim 1 is invalid both in light of prior arts under 35 U.S.C. §§ 102 and 103, and for indefiniteness 35 U.S.C. § 112(b).

**A.      BHL Has Not Shown Likely Infringement By The Accused Products.**

To show likelihood of success on the merits for the purpose of a preliminary injunction, BHL "must prove that success in establishing infringement is more likely than not." *Trebro*, 748 F.3d at 1166. Assessment of the likelihood of infringement involves two steps: first, claim construction – a court determines the scope and meaning of the claims asserted; second, the court compares the properly construed claims to the allegedly infringing device or method. *Oakley v.*

4

*Sunglass Hut Int'l*, 316 F.3d 1331, 1339. To infringe, BHL must show that the Accused Products "[meet] every claim limitation either literally or under the doctrine of equivalents." *Pfizer, Inc. v. Teva Pharm., USA, Inc.*, 429 F.3d 1364, 1376 (Fed. Cir. 2005). BHL has failed to plausibly plead that the Accused Products infringe the '052 Patent, and therefore has not come close to meeting its burden of proof justifying the extraordinary remedy of a preliminary injunction.

Although BHL correctly recites the required two-step framework for assessing infringement of a utility patent, its Complaint and PI Memo include no substantive analysis of either step[1]. In particular, it offers no analysis of whether Claim 1 of the '052 Patent actually reads on the Accused Products. BHL's infringement theory rests on a simplistic and overbroad mapping of '052 Patent's Claim 1 to the Accused Products, without offering any meaningful analysis of the claim terms or how each claim limitation is allegedly met. This omission is telling. A proper examination of the claims would not only undermine BHL's infringement theory but also expose further validity defects, such as indefiniteness. *See infra* II.B.1, II.B.2, and II.B.3.

At the outset, the Accused Products bear no resemblance to the embodiments disclosed in the '052 Patent and, on their face, do not practice Claim 1. In particular, they lack the required limitation of "a **_second housing_** including a motion sensor connected to the controller," as expressly recited in the claim language. *See* Ex. A ("'052 Patent"), Claim 1. This key structural feature is neither present nor even approximated in the Accused Products, underscoring the absence of infringement.

Further, BHL's infringement contention is purely based on attorney arguments, providing no expert evidence that one would expect to support its infringement claims. Instead, BHL brushes

---

[1] *See* PI Memo at 4 (citing *Edge Sys. LLC v. Aguila*, 635 Fed. Appx. 897, 902 (Fed. Cir. 2015) (quoting *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1211 (Fed. Cir. 1998))); *but see* Complaint ¶¶ 12, 28, 32-33, 36 (alleging infringement conclusively, conceding "[the claim charts] are presented without the benefit of discovery or claim construction")

aside the two requirements for establishing infringement: claim construction and expert evidence from one of skill in the art, mapping the construed claims to the accused device. BHL argues that "[t]hese charts are presented without the benefit of discovery or claim construction." *See* Complaint ¶ 28; Ex. 6 to Complaint. BHL tries to rely on the "plain and ordinary meaning" of the claim terms to broaden the claim terms' interpretation. However, such a reliance is misplaced, as that phrase does not operate in a vacuum. As the Federal Circuit made clear in *Philips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc), "the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art," and that person is presumed to read the term " in the context of the entire patent, including the specification."

Here, in light of the context provided by the patent's claims and specification, at least two claim terms require construction to determine the proper scope of Claim 1: (1) "affixed to the housing," and (2) "connected to the housing."

> 1. **"Affixed To" And "Connected To" Are Not Synonymous And Must Be Given Different Meanings To Preserve The Internal Consistency and Integrity Of The Claim Language.**

First, BHL's analysis simply assumes that the term "affixed to the housing" means "connected to the housing." Figure 1 below is a reproduction of Ex. 6 to the Complaint, demonstrating such improper assumption:



Fig. 1

Under the well-established claim construction principles, including the doctrine of claim differentiation, each term in a patent claim is presumed to have been chosen deliberately and to convey a distinct meaning. *See Amgen Inc. v. Sandoz Inc.*, 923 F.3d 1023, 1031 (Fed. Cir.), reh'g granted, opinion modified, 776 F. App'x 707 (Fed. Cir. 2019) ("Our precedent instructs that different claim terms are presumed to have different meanings.") (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1382 (Fed. Cir. 2008)). Accordingly, the use of "affixed to" in limitation 1(b) and "connected to" in limitations 1(c), 1(d), and 1(e) supports the conclusion that these terms are not interchangeable.

The plain and ordinary meaning of "affixed to" implies a more permanent, stationary, or rigid attachment, often involving a mechanical fastener, adhesive, or molding–such that the affixed component becomes a fixed part of the structure[2]. In contrast, "connected to" is broader, encompassing both permanent and temporary association, which may be direct or indirect, physical or electrical[3].

This distinction is particularly relevant. Claim 1 expressly requires "an energy storage affixed to the housing." However, in the Accused Products, the battery is not affixed to the first housing (headband housing[4]) as defined by BHL. Instead, it is integrated into a separate component housing that sits apart from the headband housing. At most, the battery is connected via wiring, which falls under the scope of "connected to," not "affixed to." Fig. 2 below

---

[2] *See Magna-Mug LLC v. Novelty, Inc.*, 2014 WL 3895237, *5 – *6 (S.D. Ohio 2014) (construing "affixed" to require the joining of two separate pieces, further refusing to limit the scope of "affixed" to joining only by mechanical means.); *see also Gen-Probe Inc. v. Becton Dickison and Co.*, 2011 Markman 5553783, 2011 WL 7167137, *16 (S.D. Cal. Nov. 22, 2011) (construing "affixed to" to mean "physically attached or fastened to and not integral with.")
[3] *See Douglas Dynamics, LLC v. Buyers Products Co.*, 717 F.3d 1336, 1342-43 (Fed. Cir. 2013) (finding the term "connected to" is not limited to direct connections).
[4] BHL construes this portion as the first housing, violating the canon of consistent usage. *See* Ex. 6 to Complaint; *see also* Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[C]laim terms are normally used consistently throughout the patent, the usage of term in one claim can often illuminate the meaning of the same term in other claims."); *Rexnord Corp. v. Laitram Corp.,* 274 F.3d 1336, 1342 (Fed.Cir.2001); *CVI/Beta Ventures, Inc. v. Tura LP,* 112 F.3d 1146, 1159 (Fed.Cir.1997).

demonstrates this configuration, clearly showing that the battery resides in a physically distinct rear housing and is merely "connected to" the headband housing via electrical wiring, further underscoring the absence of any structural attachment required by the claim term "affixed to."



Fig. 2

Because the patent expressly uses "affixed to" in contrast to "connected to," and because the battery in the Accused Products lack the required structural fixation to the first housing, this claim limitation is not met. The failure of even a single claim limitation defeats a finding of literal infringement. *See Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 1535 (Fed. Cir. 1991). Accordingly, BHL cannot establish that the Accused Products satisfy every limitation of Claim 1, and the infringement claim fails as a matter of law.

B.  **There Is At Least A Substantial Question Of Validity.**

When opposing a motion for preliminary injunction based on patent invalidity, the defendant is not required to establish invalidity by clear and convincing evidence, as would be required at trial. *Altana Pharma AG v. Teva Pharm. USA, Inc.*, 566 F.3d 999, 1006 (Fed. Cir. 2009). Instead, "[v]ulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Altana Pharma*, 566 F.3d at 1006 (quoting *Amazon.com*, 239 F.3d at 1359). A

preliminary injunction is therefore improper if Defendants show merely a "substantial question of validity." *Id*. Once Defendants present evidence demonstrating the '052 Patent's invalidity, BHL bears the burden of "responding with contrary evidence" and "persuad[ing] the court that, despite the challenge presented to validity, [BHL] nevertheless is likely to succeed at trial on the validity issue." *Titan Tire*, 566 F.3d at 1377.

In the absence of a valid patent, no infringement can be found. "A patent holder seeking a preliminary injunction bears the burden of establishing a likelihood of success on the merits with respect to the patent's validity." *Entergris, Inc. v. Pall Corp.*, 490 F.3d 1340, 1351 (Fed. Cir. 2007) (citing *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1351 (Fed. Cir. 2000)). BHL cannot rely solely on the statutory presumption of validity under 35 U.S.C. § 282 to carry its burden; the presumption does not preclude Defendants from raising substantial questions concerning '052 Patent's validity at the preliminary injunction stage. *See New England Braiding Co., Inc. v. A.W. Chesterton Co.*, 970 F.2d 878, 882 (Fed. Cir. 1992) ("The presumption does not relieve a patentee who moves for preliminary injunction from carrying the normal burden of demonstrating that it will likely succeed on all disputed liability issues at trial, even when the issue concerns the patent's validity.").

### 1. Claim 1 Is Invalid Under 35 U.S.C. § 112(b) For Indefiniteness.

"A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skill in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 898. The "definiteness requirement … mandates clarity …" *Id*. at 910. The patentee must "apprise the public 'of what is still open to them[]'" such that "a person of ordinary skill in the art

9

could determine whether or not an accused product or method infringes the claim." *Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1346-47 (Fed. Cir. 2022) (citations omitted).

Independent Claim 1 of the '052 Patent is indefinite, and thus invalid under 35 U.S.C. § 112(b), because it fails to particularly point out and distinctly claim "a first housing" and "a second housing." Claim 1 recites "[a] headlamp system comprising: a **<u>first housing</u>**" and further recites "a **<u>second housing</u>** including a motion sensor connected to the controller." However, the term "second housing" appears only in Claim 1 of the '052 Patent, and is nowhere mentioned or described in the written description, specification, or figures. The specification refers only to a **single housing** that contains all the key components. *See* '502 Patent at 3:15-26 (disclosing only a **single housing** including a light source, an energy storage, a controller, and a motion sensor). There is no disclosure of a second housing or indication that the claimed system involves multiple housings. A POSITA would thus not understand the boundary of "a first housing" and "a second housing" with reasonable certainty to understand further what constitutes a second housing, how it differs structurally or functionally from the first housing, or where it is located relative to the claimed components. This omission is fatal under *Nautilus*.

The prosecution history of the '052 patent does not shed light on what it means to have "a first housing" and "a second housing." In fact, the term "second housing" was added to Claim 1 during prosecution in an apparent attempt to overcome a prior art rejection. *See* Ex. B ("Amended Claims"), at 5 (adding new Claim 22 that recites "a second housing including a motion sensor connected to the controller"); Ex. C ("Arguments/Remarks") at 6 (arguing that "Applicant has added new claims 22 and 23. Support for these new claims can be found in the claims, as filed, and the figures, as filed"). However, there is no discussion at all of "a second housing" limitation in the prosecution history dockets. The patentee did not even change the figure that was supposed

10

to depict the details of "a second housing." Consequently, the amendment introduced a claim term that was unsupported by the written description and whose boundaries remained completely uncertain. As the Federal Circuit has noted, "[t]he claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art." *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014).

      Claim 1 of the '052 Patent raises the same indefiniteness concerns recently addressed by the Federal Circuit in *Mantissa Corp. v. First Financial Corp.*, No. 2022-1963, 2014 WL 607717 (Fed. Cir. Feb. 14, 2024), where the court held the term "transactional partner" indefinite. As in *Mantissa*, the disputed terms here–"a first housing" and "a second housing"–do not appear anywhere in the specification. In *Mantissa*, the Federal Circuit emphasized that "transactional partner" was added during prosecution to overcome a prior art rejection, but the amendment and accompanying remarks offered no explanation of its meaning. *Id*. at *3. The same is true here: "a first housing" and "a second housing" were introduced post hoc without any clarification in the intrinsic record. Therefore, under such circumstances, the intrinsic record created a "zone of uncertainty" such that "the public is not apprised of what is claimed by the patent," rendering the claims invalid under *Nautilus*. *See also Haddad v. United States*, 164 Fed. Cl. 28, 69-70 (2023) (finding "automatically determine the source" indefinite when word "source" did not appear in the specification, "source" could mean "a lot of different things" and "specification does not provide any detail as to the meaning of the term 'source[]'").

      Claim 1 of the '052 Patent is invalid under § 112(b). The lack of any meaningful guidance in the specification not only raises substantial questions concerning the '052 Patent's validity, but in fact renders Claim 1 of the '052 Patent indefinite as a matter of law.

11

### 2. Claim 1 Of The '052 Patent Is Anticipated In Light Of HUSS.

A claim is anticipated if each and every element of the claim is found in a single prior art reference. *Brown v. 3M*, 265 F.3d 1349, 1351 (Fed. Cir. 2001). *See also Celeritas Tech., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998) ("It is well settled that a claim is anticipated if each and every limitation is found either expressly or inherently in a single prior art reference.").

Claim 1 of the '052 Patent is invalid under 35 U.S.C. § 102(a) because they are anticipated by U.S. Patent No. 8,157,402 ("Huss"). The Huss patent issued on April 17, 2012, and claims priority to a provisional application filed on May 8, 2006. A copy of Huss is attached as Ex. D_1 ("Huss"). The Invalidity Chart (102) attached sets forth a claim-by-claim comparison demonstrating that each element of Claim 1 of the '052 Patent is disclosed in Huss, rendering the claim invalid under 35 U.S.C. § 102 for lack of novelty. *See* Ex. D_2 ("Invalidity Chart - 102").

Therefore, Huss discloses every element of Claim 1 of the '052 Patent. Since Huss issued over four years before the filing date of the provisional application that led to the '052 Patent, Huss renders Claim 1 invalid under 35 U.S.C. § 102(a).

### 3. Claim 1 Of The '052 Patent Is Rendered Obvious Under 35 U.S.C. § 103 In View Of Lively In Combination With Waters.

A claim is "obvious if a skilled artisan would have been motivated to combine the teachings of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success in doing so." *NantKwest, Inc. v. Lee*, 686 F. App'x 864, 867 (Fed. Cir. 2017) (internal citations omitted).

During prosecution of the '052 Patent, the examiner rejected the originally submitted claims 1, 4-11, 13-15, and 19 under 35 U.S.C. § 103 as being obvious by U.S. Patent No.

20160016747 ("Lively"), which discloses a hands-free headlamp system for an item of headwear. *See* Ex. E ("Lively"), at 4:57-62.

Following the examiner's rejection of the original claims 1, 4-11, 13-15, and 19, the patentee added original claims 22 and 23, which overcome the rejection by introducing a "second housing including a motion sensor connected to the controller ." *See* Ex. F ("Final Rejection"), at Page 5; *see also* Ex. G ("Notice of Allowance"), at Page 2 ("Claims 1 to 21 are cancelled, and claims 22 to 23 are allowed. The reason for allowance of claims 22 and 23 remains as set forth in the [Final Rejection] of July 10, 2020"). Thus, the patentability of original claims 22 and 23 (now Claim 1 and Claim 2) of the '052 Patent rests upon the final limitation "a second housing including a motion sensor connected to the controller." References that disclose this final limitation, in combination with Lively, render Claim 1 obvious and therefore invalid.

US. Patent No. 9,101,174 ("Waters") discloses a second housing (e.g., a head-fitting portion) including a motion sensor connected to the controller. Specifically, Waters teaches the motion sensor (e.g., a motion sensing device) to be "mounted to ***one of the head fitting portion*** and the support structure and coupled between the power source and the one or more electronic devices." *See* Waters, Claim 1. It would have been obvious to one skilled in the art to place the motion sensor of Lively within a separate region/portion (e.g., a second housing), as taught by Waters.

In sum, the combination of Lively and Waters renders Claim 1 of the '052 Patent obvious or at least raises a substantial question of obviousness.

As such, because BHL has provided no evidence demonstrating the Accused Products infringe Claim 1 as properly construed, and because Defendants "[raise] a substantial question concerning [both] infringement [and] validity," BHL fails to establish that it is likely to succeed

13

on the merits. *LifeScan Scotland, Ltd. v. Shasta Techs., LLC*, 734 F.3d 1361, 1366 (Fed. Cir. 2013). Therefore, BHL's claims fail, and a preliminary injunction is not appropriate.

## II. BHL WILL NOT SUFFER IRREPARABLE HARM.

Even with a successful showing of patent infringement—which BHL fails to make here—there is no presumption of irreparable harm. *Robert Bosh LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011). BHL must come forward with competent and particularized evidence demonstrating irreparable harm. Failure to prove irreparable harm is an independent ground for denying a preliminary injunction. *See Amazon.com*, 239 F.3d at 1350.

First, BHL fails to show any evidence of actual harm, far from establishing the requisite "'clear showing' that it is at risk of irreparable harm, which entails 'a likelihood of substantial and immediate irreparable injury.'" *Apple, Inc. v. Samsung Elec. Co.*, Ltd., 678 F.3d 1314, 1325 (Fed. Cir. 2012). Instead, BHL's assertion of irreparable harm consists entirely of attorney argument, conclusively alleging that "[it] has been irreparably and immeasurably harmed, leaving it without an appropriate legal remedy." *See* PI Memo, at 7. However, attorney argument alone is insufficient to show irreparable harm. *Nutrition 21 v. United States*, 930 F.3d 867, 871–72 (Fed. Cir. 1991) [5].

BHL asserts that "[it] has been, and continues to be, irreparably damaged through loss of market share (including the inability to generate and expand market share) and erosion of [its] patent rights." *See* Complaint, ¶ 4. However, "lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a [PI], because granting [PIs]

---

[5] *See also GuideTech Inc. v. Brilliant Instruments, Inc.*, No. 4:09-cv-05517, 2014 WL 4182340, at *7 (N.D. Cal. Aug. 22, 2014) (rejecting patentee's assertion of irreparable harm as "speculative" because its claim that it "will continue to lose good will, market position, and revenue absent an injunction [was] . . . little more than attorney argument");

14

on the basis of speculative loss of market share would result in granting [PIs] 'in every patent case where the patentee practices the invention.'" *Automated Merch. Sys., Inc. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009). In any event, BHL's alleged harm arising from the Accused Products is entirely speculative. BHL offers no evidence—such as consumer surveys, sales projections, documented lost sales, or any quantitative data—demonstrating that the Accused Products had any actual impact on BHL's business.

Additionally, BHL fails to demonstrate that the remedies available at law, including monetary damages, would be inadequate to compensate for its alleged harm. *See eBay*, 547 U.S. at 391. Any alleged harm suffered by BHL is quantifiable. In particular, BHL has calculated the allegedly monetary damages using real, measurable figures in its Response to Motion to Set Briefing Schedule. The column below demonstrates BHL's own acknowledgement that any losses it claims to have suffered can be addressed through monetary compensation, thereby undercutting any assertion of irreparable harm. *See* ECF No. 39, at 3.

| Def. No. | Seller ID | Product ID | Units Sold | Infringing Sales | Amount Restrained | %* |
|---|---|---|---|---|---|---|
| 1 | A1ZUP9DO2C2YKP | B0BP6BCWQF | 25,418 | $1,224,822.89 | $72,497.19 | 5.92% |
| 3 | A1ME6FNGCKFVY7 | B0CMWWDCKT | 3,130 | $27,507.84 | $3,506.45 | 12.75% |
| 5 | A29B5DKX548OQV | B0DH8L43KD | 2,848 | $60,732.25 | $6,688.95 | 11.01% |

*% Column calculated by dividing Amount Restrained by Infringing Sales.

Finally, BHL fails to establish that "a sufficiently strong causal nexus relates the alleged harm to the alleged infringement" to justify a preliminary injunction[6]. "To show irreparable harm, it is necessary to show that the infringement caused harm in the first place."[7]

## CONCLUSION

For the foregoing reasons, BHL's PI Motion should be denied.

---

[6] *Apple Inc. v. Samsung Elecs. Co.*, 695 F.3d 1370, 1374 (Fed. Cir. 2012).
[7] *Apple Inc.*, 695 F.3d at 1374 (quoting *Apple, Inc.*, 678 F.3d at 1324).

| | |
|---|---|
| May 7, 2025 | Respectfully submitted, |

/s/ *Shaoyi Che*
Shaoyi Che
TX Bar No. 24139843
*Admitted to N.D. Ill.*
YoungZeal LLP
9355 John W Elliott Dr, STE 25555,
Frisco, Texas 75033
Phone: 717-440-3382
Email: che@yzlaw.com
*Lead Counsel*

Tianqin Zhao
DC Bar No. 90027862
YoungZeal LLP
9355 John W Elliott Dr, STE 25555,
Frisco, Texas 75033
Phone: 585-748-3732
Email: zhao@yzlaw.com
*Pro Hac Vice Forthcoming*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on May 7, 2025, I electronically filed the foregoing document, with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for Plaintiff and all CM/ECF participants.

/s/*Shaoyi Che*
Shaoyi Che
