IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Bright Head, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 24 C 13410 |
| | ) | |
| | ) | |
| The Individuals, | ) | |
| Corporations, | ) | |
| Limited Liability Companies, | ) | |
| Partnerships, and | ) | |
| Unincorporated Associates | ) | |
| Identified on Schedule A | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Memorandum Opinion and Order

Plaintiff filed this patent infringement suit in a sealed complaint naming six defendants—five in China and one in Canada—that it identified on a sealed "Schedule A" accompanying its complaint. Plaintiff sought, and on March 28, 2025, obtained, an *ex parte* temporary restraining order, which included an asset restraint compelling Amazon and other third-party payment processors to locate and freeze all funds in defendants' accounts. The TRO also required plaintiff to deposit with the court a $10,000 security bond for "the payment of such damages as any person may be entitled to recover as a result of a wrongful restraint hereunder." ECF 22 (sealed). Defendant Yuyao Jixing Tool Co., Ltd., d/b/a WopkDupk has filed a motion for damages on the security bond as

1

a "wrongly restrained or enjoined" party under Fed. R. Civ. P. 65(c). I deny the motion without prejudice for the reasons below.

On April 24, 2025, with the TRO still in place,[1] WopkDupk filed a partially-agreed motion to set a briefing schedule on plaintiff's motion for preliminary injunction. The disputed portion of the motion concerned the restraints on WopkDupk's assets during the pendency of the preliminary injunction motion. While all agreed that the TRO would remain in effect until I resolved that motion, defendant requested that the asset restraint be modified to restrict only "the amount of funds currently withheld in Defendants' Amazon account." WopkDupk argued that this modification would allow it to resume regular business operations, and reasoned that because the accused product had been removed from its Amazon store, none of its future income would be attributable to allegedly infringing sales. Plaintiff objected to this modification, however, arguing that the frozen assets were insufficient to cover its potential damages based on defendant's allegedly infringing past sales. I adopted the parties' proposed briefing schedule without addressing the proposed modification to the TRO.

On July 25, 2025, I denied the motion for preliminary injunction. Plaintiff moved to reconsider, and I denied that motion on August 13, 2025. Plaintiff appealed those decisions to the Federal Circuit; but on

---

[1] Plaintiff moved *ex parte* to extend the *ex parte* TRO until April 25, 2025.

December 31, 2025, the appeal was dismissed for failure to prosecute. Defendant's motion for Rule 65(c) damages followed.

In the Seventh Circuit, "a prevailing defendant is entitled to damages on the injunction bond unless there is a good reason for not requiring the plaintiff to pay in the particular case." *Coyne-Delany Co., Inc. v. Capital Dev. Bd. of State of Illinois,* 717 F.2d 385, 391 (7th Cir. 1983). "In the context of a temporary restraining order, a court's denial of a preliminary injunction and dissolution of the temporary restraining order ... constitutes a final determination that the plaintiff has been wrongfully enjoined," even though the merits of the plaintiff's claims has not yet been adjudicated. *Triumph v. Ward*, No. 11 C 7927, 2011 WL 6754044, at *3 (N.D. Ill. Dec. 22, 2011) (citing cases). As the court explained in *Bestway Inflatables & Material Corp. v. Holon Supplier*, No. 23 C 2286, 2023 WL 7386062, at *1 (N.D. Ill. Nov. 8, 2023), a defendant restrained by a TRO that is dissolved upon denial of a motion for preliminary injunction is "wrongfully enjoined" under Rule 65(c) without regard to whether it ultimately prevails on the merits. In these circumstances, the denial of the preliminary injunction itself amounts to "a finding that the TRO was wrongfully entered." *Id.* at *2 (internal quotation marks and citation omitted). Although a defendant who has been wrongfully restrained need not prove its damages "to a mathematical certainty," it must do more than speculate as to its losses. *Triumph*, 2011 WL 6754044, at *5 (citation omitted).

Plaintiff identifies five reasons it believes Rule 65(c) damages are inappropriate: 1) Plaintiff "promptly and repeatedly" requested that Amazon "release defendant's restrained ASINs[2] and inventory"; 2) Amazon's restraint of defendant's inventory after June 4, 2025, was not pursuant to the TRO but rather the result of the parties' joint motion for an order directing Amazon to hold all inventory associated with the ASINs involved in this case; 3) Plaintiff's motion for reconsideration "confirms that the denial of preliminary relief did not reflect an adverse merits determination"; 4) Defendant's claimed damages are speculative and reflect "ordinary Amazon business risks"; and 5) I did not adjudicate the merits of plaintiff's claims. Most of these reasons fail to overcome the presumption that damages are appropriate under the circumstances. *See Coyne-Delany Co.,* 717 F.2d at 391.

Plaintiff presumably cites its communications with Amazon to show its good faith efforts to remove the restraints once the preliminary injunction was granted. But because the award of damages on an injunction bond "is not punitive but compensatory," *Coyne-Delany*, 717 F.3d at 392, plaintiff's good faith does not negate the wrongful nature of the restraint for purposes of Rule 65(c). *See Triumph*, 2011 WL 6754044, at *4 (citing *Coyne-Delany*, 717 F.3d at 392); *Bestway*, 2023 WL 7386062, at *1 (damages on injunction bond warranted notwithstanding

---

[2] "ASIN" stands for "Amazon Standard Identification Number," which is "a unique 10-character alphanumeric code assigned to every product listed in the Amazon store." https://sell.amazon.com/blog/what-is-an-asin (last accessed February 10, 2026).

4

plaintiff's good faith). The second reason—that it was not the TRO but the parties' joint request for an order directing Amazon to hold defendant's inventory that caused certain of defendant's claimed losses—concerns only the storage expenses representing just a tiny portion of the damages defendant seeks and does not amount to a "good reason" not to compensate defendant for losses caused by the wrongful injunction. And the third and fifth reasons both rest on the erroneous assumption that Rule 65(c) damages may not be awarded prior to (or absent) a final determination on the merits. As explained above, that is not the law.

 The fourth reason plaintiff articulates—that defendant's damages claim is too speculative to be compensated—is more compelling. Although defendant offers some evidence to show that it lost profits and incurred expenses as a result of the TRO, the specific amounts defendant seeks are not adequately supported. Defendant provides what appear to be screenshots of its Amazon seller account, which show sales data from March 1, 2025-March 31, 2025 (for one of the challenged ASINs) and from April 1, 2025-April 11, 2025 (for the other). Another screenshot appears to show storage and other costs defendant incurred from the period "January to September" (the year is not reflected) for one of the challenged items. Finally, defendant also offers the declaration of its accountant, Heyi Xu, who does not address the Amazon screenshots just described, but who states that she accessed "backend sales data for the relevant timeframe" from defendant's Amazon account to estimate the

5

losses defendant's suffered as a result of the TRO.[3] Xu Decl., ECF 80-4 at ¶ 5.

Ms. Xu states that defendant's Amazon storefront was frozen for a total of 110 days, from April 12, 2025, to July 31, 2025. Using "actual sales data from February 1, 2025, through April 11, 2025," Ms. Xu calculated the company's average daily gross revenue of $1,597.58. *Id*. at ¶¶ 6-7. She then multiplied this number by 110 to arrive at a total estimated gross revenue loss of $175,734.21. *Id*. at ¶ 8. Ms. Xu then describes several categories of "cost components," including Amazon platform commissions, fulfillment fees, product costs, and freight costs, which she subtracted from defendant's estimated gross revenue defendant over the restriction period to arrive at an estimate of defendant's total lost profits. She then added storage costs Amazon charged for inventory defendant could not sell as a result of the TRO to estimate defendant's total damages in the amount of $94,058.78. *Id*. at ¶¶ 9-11.

While I disagree with plaintiff's characterization of Ms. Xu's analysis as "speculative and methodologically defective," I agree that her qualitative description of defendant's generic "costs categories,"

---

[3] The sales data on each of these pages is set forth in two separate columns labeled "Ordered Product Sales" and "Ordered Product Sales – B2B." Defendant's accountant does not interpret these figures, and it is not clear whether defendant's total sales amount to the total of these columns, or whether the "B2B" sales are a subset of total sales. Because it is defendant's burden to prove its damages, I assume the latter. (which reflects product sales totaling $39,016.72)

which she states vaguely are supported by defendant's "internal record," fails to offer a reasonable basis for quantifying defendant's lost profits. Moreover, while the Amazon screenshots appear to support defendant's claim of lost revenue, the data they contain are not self-explanatory, and nothing in Ms. Xu's declaration sheds any light on whether or how she used these data in her analysis.

For the foregoing reasons, I deny defendant's motion without prejudice. Any renewed motion for damages on the surety bond must identify sufficient quantitative evidence to allow for a reasonable estimate of the lost profits it seeks and must be filed on or before February 27, 2026. If no renewed motion has been filed by that date, denial will become with prejudice.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: February 13, 2026